**Per Ake SKANTZE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15905.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 9, 1960.

Decided Feb. 23, 1961.

Bastian, Circuit Judge, dissented in part.

Mr. T. Emmett McKenzie, Washington, D. C., for appellant.

Mr. Stephen Shulman, Asst. U. S. Atty., at the time of argument, for appellee. Messrs. Oliver Gasch, U. S. Atty., Carl W. Belcher, Asst. U. S. Atty., and John D. Lane, Asst. U. S. Atty. at the time of argument, were on the brief for appellee.

Before WASHINGTON, DANAHER and BASTIAN, Circuit Judges.

PER CURIAM.

Defendant-appellant was convicted of the crimes of grand larceny and false pretenses. D.C.Code §§ 22–2201, 22–1301 (Supp. VIII, 1960). He was a member of the staff of the diplomatic corps of the Kingdom of Sweden, assigned to the embassy in Washington, D. C., as vice consul, chancellor and accountant. He was considered the cashier of the embassy; and it was one of his duties to keep an embassy cash fund in a safe in his office, to make certain disbursals from this fund, to replenish the money in the fund when needed, and to keep records. In order to replenish the cash in the fund, it was necessary for appellant, from time to time, to make out checks payable to "cash" and to obtain the signature of one of his superiors thereto. The checks would then be cashed and the proceeds deposited in the cash fund safe.

The events giving rise to this case occurred between 1956 and 1958. On behalf of the Government, there was testimony that on the several occasions in question appellant presented checks to one of his superiors for signature, saying that the money was needed for the embassy cash fund; that appellant came into possession of the proceeds of the checks and that he then pocketed the money received and falsely reported (by means of bookkeeping entries) having made payments to various business firms. Appellant was prosecuted under a 27-count indictment based on nine transactions such as described, the nine checks totaling $12,000.[1] On each transaction described in the indictment, appellant was prosecuted for false pretenses, grand larceny and embezzlement. It was shown at trial that appellant had no authority to take the money for himself and that the firms he claimed to have paid had in fact received nothing. At the close of the evidence, the Government elected to dismiss the counts charging embezzlement. The jury returned a verdict of

1. As a foreign service officer of the Kingdom of Sweden, appellant had diplomatic immunity. However, his own act of changing his status in 1955 from that of Swedish national to resident alien in the United States would appear to have operated to waive that immunity. No claim of immunity was or is made.

guilty on the remaining counts of grand larceny and of false pretenses. Appellant was sentenced to terms of from three to nine years on the grand larceny counts and from one to three years on those of false pretenses, the sentences to run concurrently. This appeal followed.

■ Appellant claims that the conviction cannot stand, because grand larceny and false pretenses are inconsistent offenses. We do not agree. Title 22–1301 of the D.C.Code defines false pretenses, in pertinent part, as follows:

"Whoever, by any false pretense, with intent to defraud, obtains from any person anything of value, or procures the execution and delivery of any instrument of writing or conveyance of real or personal property, or the signature of any person, as maker, indorser, or guarantor, to or upon any bond, bill, receipt, promissory note, draft, or check, or any other evidence of indebtedness, and whoever fraudulently sells, barters, or disposes of any bond, bill, receipt, promissory note, draft, or check, or other evidence of indebtedness, for value, knowing the same to be worthless, or knowing the signature of the maker, indorser, or guarantor thereof to have been obtained by any false pretense, shall, if the value of the property or the sum or value of the money or property so obtained, procured, sold, bartered, or disposed of is $100 or upward, be imprisoned not less than one year nor more than three years; or, if less than that sum, shall be fined not more than $200 or imprisoned for not more than one year, or both. * * *"

■ The language quoted shows that appellant, if the Government's evidence was believed (as it obviously was), committed the crime of false pretenses when he obtained the signature of his superior to the checks, and perhaps again when he negotiated them—though we need not pass on this latter point. Therefore, the convictions for false pretenses must stand.

As to the grand larceny counts: the governing statute, D.C.Code § 22–2201, provides:

"Whoever shall feloniously take and carry away anything of value of the amount or value of $100 or upward, including things savoring of the realty, shall suffer imprisonment for not less than one nor more than ten years."

This statute has repeatedly been construed by this court. It has long been established that "one who obtains money from another upon the representation that he will perform certain service therewith for the latter, intending at the time to convert the money, and actually converting it, to his own use, is guilty of larceny." Means v. United States, 1933, 62 App.D.C. 118, 119, 65 F.2d 206, 207, and cases cited. See also Graham v. United States, 1950, 88 U.S.App.D.C. 129, 132, 187 F.2d 87, 90, certiorari denied 1951, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353. In the instant case the trial judge pointed to the critical and controlling factor that this appellant from the very outset entertained the specific intent to steal his employer's money. He not only intended to do so, he consummated his purpose and actually converted the money to his own use. The record overwhelmingly establishes his guilt. As to each of the transactions, the appellant represented to his superiors that the money was needed for the embassy's cash account and thus procured their signatures to the checks. He intended when he wrote up the checks to keep the money if the bank should cash them as indeed it did. Then the appellant made false entries in the cash journals in an effort to cloak the transactions. He was properly found guilty of grand larceny.

The argument to the contrary errs, we think, in that it overlooks the manner in which the money came into appellant's keeping. Appellant was a trusted employee and undoubtedly did have other money lawfully in his keeping; but the money stolen was not such. He procured it through a trick or deceit. His position in the embassy, while it un-

doubtedly was a material ingredient in his deception, does not change the nature of his acts. Means v. United States, supra; Graham v. United States, supra.

We need not discuss the remaining contentions of the parties, as we find no reversible error.

Affirmed.

BASTIAN, Circuit Judge (concurring in part, dissenting in part).

I agree with the action taken by my brethren in affirming the convictions of false pretenses. However, I must dissent from affirmance of the convictions of grand larceny.

At the time of the acts complained of, appellant was a high ranking financial officer of the embassy and, in fact, was considered the cashier of the embassy. He had charge of the cash fund and it was his duty to make cash disbursals, and to account for them. It was also his duty to replenish the cash fund from time to time, preparing checks for signature by his superiors for that purpose. Such duties are analogous to those of a bank teller.

In my opinion, the nine instances complained of must be viewed within the context of appellant's employment. I fail to see any basis for segregating the nine checks in question from all the other countless checks the proceeds of which were legitimately disbursed by appellant. Obviously, he had to get money into the cash fund before he could appropriate it. But I do not think this furnishes any basis for holding that the fraud perpetrated in obtaining signatures to the checks vitiated the employer's consent to appellant's possession of the proceeds, particularly since the record furnishes no basis for determining whether he took the money as soon as it came into his possession or some time after depositing it with the fund itself in the safe in his office.

This problem points up the wisdom of the recommendation of the American Law Institute, in its Model Penal Code, to abolish the common law crimes against property, with their nice hairline distinctions, such as those between larceny and embezzlement, and to create two new, all-inclusive crimes called "theft" and "breach of trust." However, until Congress sees fit to adopt this recommendation for the District of Columbia, the common law distinctions remain in force, and it is the duty of his court to enforce them.

I would reverse the convictions of grand larceny.