**UNITED STATES of America**

v.

**Robert G. BAKER.**

**Cr. No. 39–66.**

United States District Court
District of Columbia.

Dec. 20, 1966.

William O. Bittman, Austin S. Mittler, Donald Page Moore, Department of Justice, Washington, D. C., for plaintiff.

Edward Bennett Williams and Peter R. Taft, Washington, D. C., and Boris Kostelanetz, New York City, admitted pro hac vice, for defendant.

## MEMORANDUM OPINION

GASCH, District Judge.

On January 5, 1966, following a fifteen-month investigation, a Federal Grand Jury sitting in the District of Columbia returned a nine-count indictment against the defendant in the present case, Robert G. Baker. Counts 1 and

2 of that indictment charge the defendant with evasion of income tax for the years 1961 and 1962 in violation of 26 U.S.C. § 7201. Counts 3 and 4 alternatively charge the defendant with larceny and larceny after trust of $50,000 from one Stuart Davis in violation of 22 D.C. Code §§ 2201, 2203. Counts 5 and 6 charge the defendant with larceny and larceny after trust of $17,000 from John F. Marten in violation of 22 D.C.Code §§ 2201, 2203. Count 7 charges the defendant with the interstate transportation of stolen property, to wit, $33,000, allegedly obtained by fraud from Sidney M. Taper in violation of 18 U.S.C. § 2314. Counts 3 through 7 identify the cash in question as a portion of the defendant's unreported income during the year 1962, as charged in Count 2 of the indictment. Count 8 charges the defendant with aiding and assisting one Bromley in the preparation and filing of a false 1963 return in violation of 26 U.S.C. § 7206 (2). Count 9 charges the defendant conspired with Bromley and one Jones to conceal and misrepresent the existence, sources, and nature of large parts of his taxable income in violation of 18 U.S.C. § 371. In short, according to the indictment, the defendant is charged with a series of transactions which the Government contends are closely related, the ultimate purpose of which was to defraud the Government through the evasion of his income tax. On January 24, 1966, the defendant was arraigned and entered a plea of not guilty.

Subsequently, through counsel, the defendant filed nine pretrial motions, together with memoranda in support thereof. These motions are as follows: (1) motion for suppression of evidence pursuant to Rule 41(e), F.R.Crim.P.; (2) motion to dismiss the indictment, or in the alternative, for inspection of the grand jury minutes pursuant to Rule 12 and Rule 6(e), F.R.Crim.P.; (3) motion for production and inspection of the grand jury minutes pursuant to Rule 6 (e), F.R.Crim.P.; (4) motion for discovery and inspection pursuant to Rules 16 and 17(c), F.R.Crim.P.; (5) motion for bill of particulars pursuant to Rule 7(f), F.R.Crim.P.; (6) motion to dismiss Counts 3 through 7 of the indictment pursuant to Rule 12, F.R.Crim.P.; (7) motion to dismiss Count 8 of the indictment pursuant to Rule 12, F.R. Crim.P.; (8) motion to dismiss Count 9 of the indictment pursuant to Rule 12, F.R.Crim.P.; and (9) motion for severance of counts pursuant to Rules 8(a) and 14, F.R.Crim.P.

These motions were set for hearing on the 15th of November, 1966. Prior to that hearing, the Government filed a preliminary motion seeking to have the Court inspect, in camera, certain materials relating to the motion to suppress. These materials consist of the "logs" of electronically monitored conversations, some of which do and some of which do not involve the defendant as a participant. The Court granted the Government's motion and ordered that that portion of the materials which involved the defendant as a participant should be immediately turned over to him in order that he might more effectively argue his motion to suppress and agreed to review the remaining materials to ascertain whether there were additional conversations which involved the defendant. The Court has now concluded that review.

Hearings on these motions commenced on the 15th of November, 1966, and continued for about a week, during the course of which the parties were given full opportunity to present their evidence, both oral and documentary on the issues presented. At the conclusion of the hearings, the Court took these motions under advisement, and they are now ready for disposition. These motions will be considered seriatim.

### (1) Motion for Suppression of Evidence.

Defendant Baker's motion for suppression of evidence is predicated upon the contention that the Government, in violation of Baker's constitutional rights, obtained certain evidence by means of electronic surveillance. The Government

concedes that its electronic surveillance did, in fact, violate this defendant's constitutional rights in that some of the conversations recorded were those in which defendant was a participant. The Government contends, however, that none of Baker's conversations electronically recorded led to information which resulted in the nine-count indictment which is now lodged against the defendant.[1] The defense has been furnished with the excerpts from these recordings, which are identified as the conversations in which Baker participated. The defense has been given the opportunity of interrogating, under oath, those representatives of the Government who participated in the recording of these conversations of the defendant, as well as those who supervised these activities. It has not been established that any of Baker's recorded conversations has any causal connection with, or relationship to, the indictment. Furthermore, the Government has submitted affidavits that the evidence which it intends to utilize in this case comes from a source, or sources, completely independent from the source which the defense seeks to suppress. The defense could have interrogated these affiants as to the basis of these statements.

The Government requested the Court to read a series of logs and, in effect, to check the logs to ascertain whether any other Baker conversations appear. The Court has done this and has found none. During the interrogation of the Government agents who monitored the conversations in question, it developed that certain conversations were monitored which were unidentified. These were few in number and concerned trivial matters, social in character, which have no relevancy to the subject matter of the indictment. From time to time Baker's

name was mentioned by others whose conversations were recorded, but these were instances which involved other transactions which have no relationship to those which form the subject matter of the indictment before this Court.

With respect to conversations recorded in the suite of one Black in the Carlton Hotel in Washington during the months of February, March, and April of 1963, the defense contends through the testimony of Black and Baker that Baker has established standing because of the fact that he had a key to Black's suite and because he had access at all times to his suite.[2] One of the cases relied upon is Jones v. United States.[3] In *Jones*, supra, while executing a search warrant, Federal agents found narcotics hidden in a bird's nest in a window awning of the apartment they were searching. The defendant was a guest in the apartment which had been leased by a friend who was away for several days. The defendant's subsequent motion to suppress the narcotics was resisted by the Government on the grounds that he lacked the requisite "standing" to object to the search. The Supreme Court held that the defendant's status as a guest in the apartment constituted a sufficient possessory interest in the premises to enable the defendant to invoke the protection of the Fourth Amendment. *Jones* is authority for the standing of a guest to challenge the legality of the manner in which narcotics were seized in, or adjacent to, the apartment of his host. *Jones* is not authority for the proposition that the guest stands in the shoes of the host to suppress the fruits of any and all unlawful acts that may be committed by the authorities, insofar as the apartment is concerned, particularly those which do not relate to the guest.[4] The Government recognized this

---

1. Cf. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

2. United States v. Jeffers, 342 U.S. 48, 50, 72 S.Ct. 93, 96 L.Ed. 59 (1951).

3. 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

4. Jones v. United States, supra, 362 U.S. at 261, 80 S.Ct. at 731:

 "In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only

proposition of law by making available to the defendant the transcriptions of all conversations in which he was a participant,[5] and by refusing to give him others.[6]

At this point the Government contends that since there is no relevancy between the conversations in which defendant was a participant and the indictment that no taint attaches to the indictment. The defense, on the other hand, insists upon the opportunity to examine all transcriptions, including those recorded conversations between other persons and concerning many other subjects which do not in the slightest concern the defendant. Even if Baker had some unrevealed interest in these conversations in which he was not a participant, they have no relevancy to the indictment and are, therefore, extraneous.[7]

The defendant and his business associate, Black, took the witness stand respecting the special status of the defendant in the suite rented by Black at the Carlton. The substance of the testimony is that Baker had a key, that he was welcome at all times as a guest of Black. The suite consisted of two rooms—a sitting room and a bedroom—in each of which there was telephone service. The defendant testified that he made many telephone calls from this suite in the three-month period under consideration. He testified that he conferred with others in the suite. The Government has turned over to the defense all excerpts of the recorded conversations in which the defendant was a participant. This is in compliance with defendant's motion to suppress in which he specified those conversations in which defendant was a participant. On cross-examination of defendant, the Government sought to elicit testimony from the defendant as to which portions of the recorded conversations were relevant to any matters contained in the indictment. Over the objection of the defense, the Court permitted this line of interrogation under the authority of the *Branch* case in our

---

through the use of evidence gathered as a consequence of a search or seizure directed at someone else."
and at 267, 80 S.Ct. at 734:
"No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when *its fruits are proposed to be used against him.*" (Emphasis supplied.)

5. United States v. Coplon, 185 F.2d 629, 28 A.L.R.2d 1041 (2d Cir. 1950), cert. denied, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952). In that case, defendant was convicted in the New York District Court of conspiring to defraud the United States by attempting to deliver secret information to one Gubitchev, a citizen of a foreign nation. Federal agents were shown to have employed wiretapping devices, both at her home and her office, to collect information regarding her activities. The trial judge inspected, in camera, a certain portion of the recordings involved without disclosing them to the defense on the basis that their disclosure would be inimical to the national security and found that these "taps" had not led to any evidence in-

troduced at the trial. The Second Circuit reversed, holding that it was error for the trial judge not to have allowed the defense to inspect those records which he read in camera and on which, in part, he based his finding that the "taps" had not led directly or indirectly to any evidence introduced at the trial. It should be emphasized, however, that all of these recordings directly involved the defendant as a participant. In the instant case, all recordings of conversations in which the defendant was a participant have been given to him.

6. Goldstein v. United States, 316 U.S. 114, 121, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942).

7. In Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), a question before the Court was the release to the defense of grand jury testimony of those witnesses on whom the Government relied at trial for the purpose of cross-examination. The Supreme Court delineated the responsibility of the trial court as follows, 384 U.S. at 875, 86 S.Ct. at 1851:
"The trial judge's function in this respect is limited to deciding whether a case has been made for production, and to supervise the process: for example, to cause the elimination of extraneous matter * * *."

Court of Appeals,[8] since on direct examination Baker had testified concerning his business conferences and calls. Defendant was unable to provide the Court with any specificity whatever concerning the relevancy of these calls to any matters contained in the indictment, nor was his counsel able to establish any such relationship. With respect to the conversations at the Carlton Hotel in which the defendant was a participant during the months of February, March, and April, 1963, the Court concludes that the defense has failed to establish any causal connection between the recorded conversations and the matters contained in the indictment.

■ The defense examined Government monitors of the recordings respecting conversations of participants whom the monitors could not identify on the theory that some of these conversations might have been those of the defendant Baker. The Court concludes that none of these conversations respecting unknown participants have any causal connection with matters contained in the indictment. However, in the interest of affording the defendant all reasonable discovery, and in view of the special standing for which the defense contends with respect to defendant Baker in this suite of Black in the Carlton, the Court will order that the Government furnish to the defense all conversations attributed by the monitors at the Carlton to unknown participants during the period in question. The invasion of the privacy[9] of known participants, other than defendant, in these recorded conversations will not be compounded by the release of them by the Court.

■ With respect to conversations monitored by the Government in the executive suite of one Levinson in the Fre-

mont Hotel at Las Vegas, the defense has not established any special standing of the defendant Baker concerning that suite. These recordings were part of an investigation of the alleged "skimming" operations of Levinson and pursuant to this electronic surveillance, certain conversations in which the defendant participated were recorded. The Government has given to the defense all such conversations. The Court has examined the logs of all recorded conversations in the executive suite of Levinson in the Fremont Hotel at Las Vegas and has found no additional conversations in which the defendant Baker was a participant. The Court finds that none of the conversations in which the defendant participated has any relevance to the matters contained in the indictment. Conversations, few in number concerning unknown participants, were also recorded. Since no standing has been established by the defendant Baker with respect to the executive suite of Levinson, the Court does not feel that the defense is entitled to these conversations, or to other conversations than those in which the defendant was a participant. Here, again, the Court will not compound the wrong admitted by the Government in releasing the conversations of other participants and, thus, further invading their privacy.[10]

Electronic surveillance was also conducted in Miami, Florida, between the dates January 21, 1963, to July 13, 1965, concerning the office of one Sigelbaum. This surveillance was also designed to inquire into the organized crime activities of that person and did only incidentally reveal a few conversations in which the defendant participated. The Court has examined all logs of these recorded conversations with the assistance of his colleague, Judge Aubrey Robinson, and has

8. Branch v. United States, 84 U.S.App. D.C. 165, 171 F.2d 337 (1948).

9. See Griswold v. State of Connecticut (1965), 381 U.S. 479, at 483, 85 S.Ct. 1678, at 1681, 14 L.Ed.2d 510:
"In other words, the First Amendment has a penumbra where privacy is protected from governmental intru-

sion. In like context, we have protected forms of 'association' that are not political in the customary sense but pertain to the social, legal, and economic benefit of the members."

10. Griswold v. State of Connecticut, supra.

concluded that no additional conversations in which the defendant was a participant are contained therein. None of the conversations in which defendant participated has any relevance to matters contained in the indictment.

■ A few conversations were recorded in which the participants are unknown. These conversations by and large are trivial and of no significance and clearly have no relevance to the matters contained in the indictment. The Court concludes that since no special standing has been established by the defense concerning the defendant Baker in the Sigelbaum office, that the defendant is not entitled to recorded conversations of these unknown participants nor to those in which he was not a participant.

■ Other logs of recorded conversations at other places in Las Vegas were delivered to the Court for its inspection. The Government has represented that in these recordings no conversations were recorded in which the defendant Baker was a participant. The Court has examined these logs and finds the representation of the Government to be accurate. The Court further finds, in view of the fact that the defendant Baker has established no special standing concerning these other places, that he is not entitled to the conversations of unknown participants nor to the conversations in which he did not participate. Additionally, the Court has observed no conversations of any participants which concern, or have any relevance to, matters contained in the indictment.

■ In view of the Government's concession of illegality, the defendant's motion to suppress those conservations in which the defendant was a participant will be granted. It is noted that recordings of all such conversations have been delivered to the defense. In view of the defendant's special standing with respect

to the Black suite at the Carlton, additional conversations recorded at that point respecting unknown participants will be delivered to the defense by the Government, and they will be suppressed. For the reasons hereinbefore stated, the defendant's motion to suppress with respect to additional conversations will be denied. All logs submitted to the Court will be impounded and held for appellate review.

■ In view, however, of the decision of the Supreme Court in Black v. United States,[11] the defense will be given the opportunity of further inquiry during the course of the trial,[12] out of the presence of the jury to the degree deemed reasonable by the Court, to establish whether a causal connection exists between such recordings and evidence sought to be offered by the Government in support of the indictment.

In view of the ruling heretofore made respecting the defendant's motion to suppress and the opportunity afforded the defense during the course of the trial of this cause to examine witnesses and elicit further testimony concerning any causal connection between unlawful recordings and evidence which the Government will seek to introduce during the course of the trial and the opportunity which the defense has been afforded to question the monitors of the conversations recorded and other agents of the Federal Bureau of Investigation who have been in charge of this aspect of the Government's surveillance, subpoenas[13] on other agents of the Government will be quashed.

(2) Motion to Dismiss the Indictment, or in the Alternative, for Leave to Inspect the Grand Jury Minutes.

Defendant's motion, pursuant to Rule 12, F.R.Crim.P., for dismissal of the indictment, or in the alternative, for inspection of the grand jury minutes, is predicated upon the alleged bias and prej-

11. 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (Nov. 7, 1966).

12. And see Goldstein v. United States, 316 U.S. 114, 116, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942).

13. See Defendant's Exhibit 4.

udice of the grand jury which returned this indictment due to the extensive publicity which preceded and continued through the grand jury's investigation. As an appendix to his moving papers, defendant has filed many examples of the widespread publicity which surrounded the Senate and grand jury investigations of this case.

As a result of the alleged bias and prejudice, defendant contends that his rights under the Fifth Amendment to indictment by a fair and impartial grand jury were violated. In support of this proposition, the defendant relies primarily on Beck v. Washington.[14] In that case, a specially convened grand jury, acting upon information uncovered by a Senate investigating committee, indicted the controversial labor leader, Dave Beck.

Upon the return of an indictment, Beck moved for dismissal on the grounds that the impaneling judge had failed to conduct a *voir dire* examination of the prospective grand jurors to ascertain whether any of them were biased or prejudiced and, thus, whether his right to a fair and impartial grand jury under the due process clause of the Constitution was violated. Beck's evidence of bias was very similar to that relied on in this case and consisted primarily of a showing of adverse publicity which presupposed his guilt and the impaneling judge's alleged failure to instruct properly the grand jurors.

His motion was denied and his eventual conviction was upheld by the Washington Supreme Court. Refusing to even "remotely intimate any view" on the validity of the defendant's claim that the due process clause requires an unbiased grand jury, the Supreme Court affirmed, holding that no specific evidence of actual prejudice had been shown. However, the majority did cite *dicta* in three cases which indicated that they thought a plausible argument might be made in support of the defendant's premise.[15]

In finding no evidence of prejudice in *Beck,* the Supreme Court emphasized the limited *voir dire* conducted by the trial judge prior to impaneling the grand jury and pointed out that no juror personally knew Beck, was shown to be adverse to labor unions, and that each had taken an oath not to indict any person through "hatred or malice." The Court further pointed out that the grand jury sat for six weeks, heard voluminous testimony, and gave the matter meticulous consideration. In sum, the Supreme Court looked at the totality of circumstances surrounding the impanelment and deliberations of the grand jury and concluded that Beck had failed to show that the body that indicted him was biased or prejudiced against him.

In the present case, the grand jury transcript consists of approximately ten thousand pages. The record shows that this was not a specially convened but rather a regularly impaneled grand jury, the members of which took an oath to "diligently, fully and impartially inquire into and true presentment make of all offenses which shall come to your knowledge" and to "present no one from hatred or malice, nor leave anyone unpresented from fear, favor, affection, reward, or hope of reward."[16] The Court has no reason to assume that the members of the grand jury failed to live up to this obligation. In fact, as the Court said in United States v. Kahaner:[17]

"It must be presumed that the grand jury followed the court's instructions as to its powers, duties and obligations and that each grand juror fully lived up to and observed his solemn oath. Indeed there is a strong presumption

14. 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962).

15. Lawn v. United States, 355 U.S. 339, 349–350, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956); Hoffman v. United States, 341 U.S. 479, 485, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). See also Calkins, Grand Jury Secrecy, 63 Mich.L.Rev. 455 (1965).

16. Tr., Swearing of September 1964 Grand Jury (September 1, 1964).

17. 204 F.Supp. 921, 923 (D.C.1962).

of regularity accorded to the deliberations and findings of grand juries."

While it is true that the impaneling judge did not instruct the prospective members of the grand jury to disregard adverse publicity, on several occasions the Government counsel who presented this matter to the grand jury admonished them in this respect. For example, at Page 9988 of the grand jury minutes, the members were instructed as follows:

"Now, during the course of this Grand Jury's investigation, myself and the attorneys assisting you in your investigation, have from time to time told you to consider as evidence only the sworn testimony which you have heard from that witness chair and the documents that have been produced before you, and not various newspaper stories, books, radio, television reports and the like.

"This morning, as your investigation comes to a close, I will again want to caution you about this. You should clearly understand that the newspaper, radio and television reports are not evidence. They are not to be considered by you as evidence.

"Equally important, you should not be prejudiced in any manner whatever by reason of such publicity.

"You should not feel coerced or pressured as a result of the publicity which from time to time has been apparent during this investigation. Newspaper, radio, television, and other accounts, have no place in your consideration or ultimate decision of the issues before you."

It is significant that this admonition was given shortly before the members of the grand jury voted on the indictment under consideration. At Pages 578–9 of the transcript of the hearings on these motions, defense counsel expressed the view that such an admonition would, in effect, protect the basic rights of the defendant.

In addition, the grand jury sat for over a year, heard approximately one hundred and seventy witnesses, and examined thousands of documents, all of which would indicate that the members thereof gave careful and meticulous consideration to the evidence before them prior to their returning this indictment. Furthermore, most of the matters before the grand jury were ignored. Certainly, as to those matters, the defense has not established any entitlement. Counsel has conceded [18] that the secrecy of those minutes which did not result in an indictment should be preserved.

The courts which have cited the *Beck* case, supra, have done so in support of the proposition that adverse publicity alone does not in itself constitute a sufficient showing of bias and prejudice to warrant dismissal.[19] In the *Estes* case, the defendant moved to be allowed to exercise challenges for cause as to the individual grand jurors, based upon the alleged bias and prejudice which he contended emanated from the extensive publicity surrounding the case. The motion was denied and Estes was convicted on review, the Fifth Circuit, after discussing Rule 6(b) (1), F.R.Crim.P., which sets forth the grounds on which a defendant may challenge the array of grand jurors, quoted with approval Judge Holtzoff's statement in United States v. Knowles,[20] to the effect:

"Challenges for bias, or for any cause other than lack of legal qualifications, are unknown as concerns grand jurors. No provision is made for peremptory challenges of grand jurors and no such challenges are permitted. Likewise no *voir dire* examination exists in respect to grand jurors. In other words, the status of a member of a grand jury

18. Page 570 of the transcript of the hearings on these motions.

19. Estes v. United States, 335 F.2d 609 (5th Cir. 1964), cert. denied, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965);

United States v. Hoffa, 205 F.Supp. 710 (S.D.Fla.1962).

20. United States v. Knowles, 147 F.Supp. 19 (D.C.D.C.1957).

may not be questioned except for lack of legal qualifications."

and on the Beck v. Washington, supra, point, the Court continued:

"There was no specific showing of bias and prejudice by appellant resulting from the widespread publicity, and the fact alone of such publicity did not in itself constitute a sufficient showing of bias and prejudice." [21]

In the *Hoffa* case, supra, the Florida District Court held that a specific showing of prejudice is necessary to vitiate the indictment and that the mere demonstration of adverse publicity was insufficient to establish such prejudice. After discussing Beck v. Washington, supra, the Court went on to say, 205 F.Supp. at page 718:

"Nothing in that decision is contrary to the principles discussed hereinabove; and inasmuch as the Court finds that the defendants in this case likewise failed to establish that the grand jury was biased or prejudiced against the defendants, this claimed ground for dismissal is without merit."

The defendants in the *Hoffa* case also contended that the impaneling judge erred in failing to instruct the grand jury to ignore the adverse publicity. On this point, the Court stated, 205 F.Supp. at page 719:

"The alleged failure of the presiding Judge to give cautionary instructions to the grand jury against bias and prejudice does not warrant a dismissal of the indictment, especially in the light of any specific proof that the grand jury was, in fact, biased and prejudiced."

In Beck v. United States,[22] Beck was prosecuted for income tax evasion arising out of the same factual situation involved in the State of Washington prosecution. With regard to the adverse publicity, the Court said at 627:

"We rule that a specific showing of prejudice is necessary to make erroneous the action of the trial judge in refusing to dismiss the indictment."

See also United States v. Osborn.[23]

■ In view of the complete absence of any specific showing of prejudice in this case, the Court feels that no useful purpose would be served by allowing the defendant to inspect the grand jury minutes in order to further investigate the possibility of bias.

■ Historically, grand jurors were selected from the body of the people, and their work was not hampered by rigid procedural or evidential rules. Grand jurors could act on their own knowledge and were free to make their presentments or indictments on such information as they deemed satisfactory.[24] In Lawn v. United States,[25] 355 U.S. at page 350, 78 S.Ct. 311, the Court was urged to establish a rule permitting defendants to challenge indictments on the ground that they were not supported by adequate or competent evidence. This the Court declined to do, saying it would run counter to the whole history of the grand jury institution in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designated to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial. In *Lawn*, supra, the Court held that petitioners were not in the circumstances of that case entitled to a preliminary hearing to enable them to satisfy their unsupported suspicions that the 1953 grand jury, which returned the indictment in question, had made improper use of ma-

21. 335 F.2d 609, at 613.

22. 298 F.2d 622 (9th Cir. 1962).

23. 350 F.2d 497 (6 Cir. 1965).

24. Costello v. United States, 350 U.S. 359, 362, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

25. 355 U.S. 339, 350, 78 S.Ct. 311, 2 L.Ed. 2d 321 (1958).

terials which were before another grand jury.

█ Here, defendant has made absolutely no showing that the extensive publicity to which defendant's pleadings refer had any adverse effect upon the grand jury which was sitting to consider this case. Accordingly, defendant's motion to dismiss the indictment on the ground of adverse publicity, or in the alternative for leave to inspect the grand jury transcript will be denied.

(3) Motion for Production and Inspection of the Grand Jury Minutes.

█ Further, for the reasons stated above and in view of the numerous precedents supporting nondisclosure which set forth the traditional reasons advanced for preserving the grand jury secrecy,[26] the defendant's separate motion for production and inspection of the grand jury minutes will also be denied.

█ Defendant has also sought leave to examine the grand jury testimony of the witnesses on whom the Government will rely at trial. Normally, grand jury testimony is producible only upon a showing of "particularized need." Pittsburgh Plate Glass Co. v. United States, supra. As the Supreme Court indicated in *Proctor & Gamble,* supra, and reaffirmed in *Dennis,* supra, the need for a full and fair cross-examination may provide the necessary "particularized need."[27] In the present case, after these witnesses have testified at trial, the Court will make their grand jury testimony available to defense counsel and provide an adequate opportunity for him to study such testimony in preparation for cross-examination.

(4) Motion for Discovery and Inspection Pursuant to Rules 16 and 17

(c), Federal Rules of Criminal Procedure.

Pursuant to these rules, the defense seeks discovery of twenty-one items, of which the Government has furnished items one through eighteen. Thus, the areas in dispute are items nineteen, twenty, and twenty-one. Amended Rule 16 of the Federal Rules of Criminal Procedure became applicable on July 1, 1966. The pertinent portion of this Rule, as amended, reads as follows:

"(a) Defendant's Statements; Reports of Examinations and Tests; Defendant's Grand Jury Testimony. Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph any relevant (1) written or recorded statements or confessions made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, * * *."

█ The controversy between the defendant and the Government centers around the request made in item twenty, which is for the written or recorded conversations of the defendant. The Government takes the position that the Rule, as amended, relates only to written statements or recordings of the defendant made to agents of the Government, such as the Federal Bureau of Investigation, or the Internal Revenue Service. The Court has examined the committee report and finds no basis for this contention. It may be, as the Government contends, that the cases noted by the committee refer entirely to situations in which the written statement of the defendant or recordings of the defendant's statement

---

26. United States v. Proctor & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); United States v. Garsson, 291 F. 646 (S.D.N.Y. 1923). And see Dennis v. United States, supra, which ordered a limited disclosure of grand jury minutes respecting the tes-

timony of witnesses who are called by the Government at trial upon a showing of particularized need.

27. In *Dennis,* supra, this was clearly shown in view of the long delay (seven years) between the presentation of the matter to the grand jury and trial of the case.

were made by agents of the Government. The committee's note, however, contains no such limitation:

"(1) Relevant written or recorded statements or confessions made by the defendant, or copies thereof. The defendant is not required to designate because he may not always be aware that his statements or confessions are being recorded. The government's obligation is limited to production of such statements as are within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government. Discovery of statements and confessions is in line with what the Supreme Court has described as the 'better practice' (Cicenia v. La-Gay, 357 U.S. 504, 511 [78 S.Ct. 1297, 2 L.Ed.2d 1523] (1958)), * * * " [28]

Accordingly, the request for defendant's statements and recordings (item twenty) is granted. Under item nineteen, the defense has specified the statements of Clifford Jones and Wayne Bromley. If either is called by the Government to testify, the defense will be entitled to any statements made by either of them to the Government for the purpose of cross-examination prior to cross-examination. See Rule 16(b), F.R.Crim.P., which incorporates 18 U.S.C. § 3500.

▉ Item twenty-one would require the Government to produce the object, device, or the paraphernalia used to record the conversations which the defense seeks from the Government. At this stage of the proceedings, it is by no means clear that any device or paraphernalia was used to make recordings.[29] If other recordings of the defendant were, in fact, made, it is the substance of the recordings that is of interest to the Court, not the manner in which they were made. If, pursuant to the Court's ruling

respecting item twenty, recordings of conversations of the defendant are produced by the Government and if question arises as to the intelligibility of such conversations, then the defense may renew its motion upon a showing of good cause,[30] and materiality,[31] for the production of the device or the paraphernalia used by the Government in recording the defendant's voice. In that connection, the defense has furnished no authority for its motion under item twenty-one. Prior to renewing its motion under item twenty-one, the defense should provide such authority. In the absence of appropriate authority, the motion will be denied.

(5) Motion for Bill of Particulars Pursuant to Rule 7(f), Federal Rules of Criminal Procedure.

Approximately fifty-two items are comprised within defendant's demand for a bill of particulars. The Government has furnished an appropriate response to approximately half of these requests. The first group which the Court considered were items one through five. The Government agreed to comply with items one through three. The defense withdrew item four. With respect to item five, the Government agreed to furnish the defense with all the information it has on that subject. At Page 630 of the transcript of the record, this appears to be satisfactory to the defense.

▉ As to Counts 3 through 6 of the indictment, the defense has established what has been described under other circumstances as a "particularized need." [32] Counts 3 and 4 charge respectively larceny and larceny after trust. The taking was from the same individual and it involved the same money. The indictment in each instance is phrased in statutory terms. Normally, this would be sufficient and normally, on a motion for a bill

---

28. H.R.Doc.No. 390, 89th Cong., 2d Sess. (1966), at 21.

29. Counsel is seeking to examine recording devices other than those used in the recordings discussed in Section (1) hereof.

30. United States v. Smith, 209 F.Supp. 907, 912 (1962); United States v. Iozia, 13 F.R.D. 335 (1952).

31. Rule 16(b), F.R.Crim.P.

32. Dennis v. United States, supra.

of particulars evidentiary material is not required to be produced. In oral argument, counsel made it clear that he was not complaining [33] about the charging in successive counts 3 and 4 and 5 and 6 in alternative theories. He does request, however, factual specificity so that he can prepare his defense.

There is precedent for this type of joinder.[34] There are, of course, many cases wherein the defendant is charged in successive counts with larceny and embezzlement of the same funds, from the same victim, at the same time.[35] Thus, there is case law authority for joining this type of offense, that is to say, larceny and larceny after trust.

As to the items requested which relate to Counts 3 through 6, it is understood that item six has been furnished. Item seven requests the place within the District of Columbia where defendant stole, took, and carried away the money referred to in Count 3. Normally, an indictment alleging the commission of an offense within the jurisdiction of the trial court meets the requirement of certainty of place of commission.[36] Here, however, to the extent that the Government knows at this time the specificity as to place requested in items seven, nine, fourteen, and sixteen, it will be furnished. Item eight requests specificity as to how and through what specific conduct the defendant stole, took, and carried away the money referred to in Count 3. The grant or denial of a bill of particulars is addressed to the sound discretion of the Court,[37] and matters purely evidentiary in character are normally not required of the Government. However, where the Government has elected to charge in successive counts larceny and larceny after trust and where these charges relate to the taking of the same money from the same victim, the defendant is entitled to those particulars necessary to enable him to prepare his defense, to avoid surprise, and to plead double jeopardy.[38] It is recognized, however, that the Government should not be forced to an unnecessary disclosure of its evidence in advance of trial.[39] Items eight, ten, eleven, fifteen, and seventeen will be granted and the Government will furnish the information sought consistent with the limitations imposed by Judge Levet's opinion in *Bentvena*.[40] It appears that items twelve and thirteen, as well as eighteen, nineteen, and twenty, have heretofore been furnished by the Government.

Items twenty-one and twenty-two call for evidentiary material respecting Count 7. Count 7 does not present the same questions as confront the defendant with respect to the larceny and larceny after trust counts, namely, Counts 3, 4, 5, and 6. In the absence of those special circumstances, the usual rule with reference to evidentiary matters will be followed and these requests will be denied.

As to Count 8, item twenty-three has been delivered by the Government to the defense. Item twenty-four seeks to cause

---

33. Page 643 of the transcript of oral argument.

34. Atkinson v. United States, 53 App.D.C. 277, 289 F. 935 (1923).

35. See Means v. United States, 62 App. D.C. 118, 65 F.2d 206 (1933); and Dobbins v. United States, 81 U.S.App.D.C. 218, 157 F.2d 257 (1946), wherein defendant, a lawyer, was charged with 69 counts—23 counts under each of the three crimes charged: embezzlement, false pretenses, and larceny after trust. See also Skantze v. United States, 110 U.S. App.D.C. 14, 288 F.2d 416 (1961). The defendant, there, was charged with grand larceny and false pretenses, the Government having elected to dismiss the embezzlement counts before the case went to the jury.

36. Beard v. United States, 65 App.D.C. 231, 82 F.2d 837 (1936). And see Flores v. United States, 338 F.2d 966 (10th Cir. 1964).

37. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927).

38. United States v. Bentvena, 193 F.Supp. 485, 498 (S.D.N.Y.1960).

39. United States v. Dilliard, 101 F.2d 829, 835 (2d Cir. 1938).

40. United States v. Bentvena, supra note 38.

the Government to "specify the statements and/or acts by which defendant is claimed to have aided, assisted in, counseled, procured, or advised the preparation and presentation of the return referred to in paragraph 5 of Count 8." In oral argument, counsel took the position that the decided cases set forth in his memorandum show that the defense is entitled to the "way in which he aided." The decided cases referred to in counsel's memorandum are United States v. Van Allen,[41] and United States v. Lieberman.[42] In the *Van Allen* case, in pertinent part, Judge Cashin, of the Southern District of New York, 28 F.R.D. at page 338, granted the defendant Kelly's bill to the extent that the Government was required to state whether he was a principal or an aider or abettor in certain specified counts.

Here, it is clear that the Government has charged that the defendant was an aider and abettor in Count 8. In United States v. Lieberman, supra, Judge Dimock pointed out that Lieberman, under 18 U.S.C. § 2, could be charged as a principal although his participation was that of an aider and abettor. He required the Government to state "whether defendant Lieberman introduced the diamonds into the United States personally or aided, abetted, counseled, commanded, induced, procured or caused such introduction and, if defendant Lieberman performed any of the latter acts, which one or ones he performed and the means by which it or they were performed." *Judge Dimock then said, 15 F.R.D. at page 281:*

"I do not conceive what I am requiring to be a disclosure of the Government's evidence in the sense in which that expression is used when we are told that such is not the function of a bill of particulars. I do not require that the Government do more than in the example above given where I suggest that if that is the charge the statement be made that Lieberman introduced the introduction by offering to purchase the diamonds if they were successfully brought in."

The Government will respond to this item in line with Judge Dimock's statement. The remaining item under Count 8, namely, item twenty-five, has been supplied.

Item twenty-six specifies an agreement referred to in paragraph 6 of Count 9 and requests information as to whether the specified agreement, or any part thereof, is in writing, and if so, state the time and the place of the making of the writing and the full contents thereof. If there is a written agreement in which the defendant participated, as evidenced by his signature, or otherwise, a copy thereof will be furnished to him as required by Rule 16(a) (1) F.R.Crim.P., as amended. The remaining portions of the request contained in item twenty-six are denied for the reason that they appear to require the type of proof available to the defendant only after the witness has testified under the provisions of the Jencks Act.[43]

As to items twenty-seven, twenty-eight, twenty-nine, thirty, and thirty-two, these items appear to require disclosure of the minute details of the Government's proof and are, for that reason, denied. As the Ninth Circuit said in Yeargain v. United States,[44]

"The purpose of a bill of particulars is to protect a defendant against a second prosecution for an inadequately described offense, and enable him to prepare an intelligent defense. Remmer v. United States, 9 Cir., 1953, 205 F.2d 277, 281. A defendant is not entitled to know all the *evidence* the government intends to produce, but only the *theory* of the government's case. Remmer v. United States, supra, [205 F.2d] p. 282; United States v. Caserta, 3 Cir., 1952, 199 F.2d 905.

"The granting or refusal to grant the bill of particulars is a matter with-

41. 28 F.R.D. 329 (S.D.N.Y.1961).

42. 15 F.R.D. 278 (S.D.N.Y.1953).

43. 18 U.S.C. § 3500.

44. 314 F.2d 881, 882 (9th Cir. 1963).

in the sound discretion of the trial court. Wong Tai v. United States, 1927, 273 U.S. 77, 47 S.Ct. 300, 71 L. Ed. 545; Rodella v. United States, 9 Cir., 1960, 286 F.2d 306, 310, certiorari denied 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199."

See also United States v. Kushner,[45] and United States v. Genstil.[46]

Item thirty-one has been given the defense.

Items thirty-three, thirty-four, thirty-five, thirty-six, thirty-eight, thirty-nine, and fory have been furnished the defense by the Government. Respecting item thirty-seven, the Government has responded that it has no such information.

██ ██ Item forty-one requests the identification by name, address, and occupation of each aider and abettor or coconspirator not named in the indictment but known to the Government at the time of the indictment. On the authority of United States v. Pignone,[47] this information will be furnished. In item forty-two, the defense requests the identification by name, address, and occupation of each aider and abettor or coconspirator unknown to the Government at the time of the indictment but who has since become known. On the authority of United States v. Covelli,[48] wherein the Court said at 590:

"The names and addresses of any coconspirators who have become known to the Government since the indictment was returned should certainly be furnished. Any such co-conspirators occupy the same stance as a defendant named in the indictment, at least insofar as their identity and addresses are concerned, and the fact that they were not known at the time of the presentment before the grand jury is merely fortuitous and cannot be a basis for refusal to disclose."

this information will be furnished. In item forty-three the defense requests that the Government "particularize the overt acts in furtherance of the conspiracy which were unknown at the time of the indictment but have since become known, specifying as to each the nature of the act, the time, place, and persons present." The case on which the defense relies is *Covelli*, supra, wherein the Court said, at 590:

"The same principle applies to overt acts which could have been included in the indictment but were not and which the Government intends to present testimony about at the trial. If the requested particulars of these acts are not now disclosed, the Court will inevitably be met at the trial with a motion to strike or exclude on the ground of surprise. The Government cannot put the defendant in the position of disclosing certain overt acts through the indictment and withholding others subsequently discovered, all of which it intends to prove at the trial. This is the type of surprise a bill of particulars is designed to avoid."

If the Government intends to introduce testimony as to additional overt acts, such information will be furnished at this time in accordance with the principles enunciated in *Covelli* and quoted herein.

██ Item forty-four has been withdrawn. Item forty-five requests the identification of the person referred to in each of the overt acts numbered 28, 29, 30, 31, 31, 32, and 41. With the exception of capital cases where the defendant is provided with a list of Government witnesses according to statute,[49] under the prevailing case law,[50] the Gov-

---

**45.** 135 F.2d 668, 673 (2d Cir. 1943).

**46.** 205 F.Supp. 604, 605 (D.C.D.Mass. 1962).

**47.** 189 F.Supp. 532 (D.C.D.Conn.1960).

**48.** 210 F.Supp. 589 (D.C.N.D.Ill.1962).

**49.** 18 U.S.C. § 3432.

**50.** United States v. Smith, 16 F.R.D. 372 (W.D.Mo.1954); Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L. Ed. 545 (1927).

ernment is under no obligation to furnish the defendant with a list of its potential witnesses. Accordingly, this request will be denied. Information requested in items forty-six, forty-seven and forty-seven (a) has been granted. Items forty-seven (b), forty-eight, forty-nine, fifty, fifty-one, fifty-two, and fifty-five have been withdrawn. Item fifty-three is denied for the reason stated in item forty-five. Item fifty-four has already been given the defense by the Government.

(6) Motion to Dismiss Counts 3 Through 7 of the Indictment Pursuant to Rule 12, F.R.Crim.P.

Pursuant to Rule 12, F.R.Crim.P., defendant moves to dismiss Counts 3 through 7 on the following grounds:

a. That the counts violate Rule 7(c) of the Federal Rules of Criminal Procedure and the Sixth Amendment in that they fail to apprise him of the nature of the charges against him;

b. That each of the counts violates Rule 8(a) of the Federal Rules of Criminal Procedure in that it charges more than one offense in a single count; and

c. That the alleged errors in pleading these counts cannot be cured without depriving the defendant of his right to trial upon indictment by a grand jury.

Counts 3 and 4 charge alternatively larceny and larceny after trust respecting the same transaction. Counts 5 and 6 charge alternatively the same offenses, larceny and larceny after trust, respecting a second similar transaction. Count 7 charges the interstate transportation of stolen money in violation of 18 U.S.C. § 2314. In a second paragraph to each of these counts, 3 through 7, it is alleged that the money alleged to have been illegally obtained was not reported in

Count 2, which charges income tax evasion.[51] The propriety of joining alternatively has previously been discussed in the section of this opinion in which defendant seeks and has been granted an extensive bill of particulars.

(a) Rule 7(c) of the Federal Rules of Criminal Procedure requires that the count be phrased in plain, concise, and definite language, and that it include the essential facts constituting the offense charged. The Sixth Amendment, in pertinent part, requires that the defendant be informed of the nature and cause of the accusation.

The defendant relies upon quotations from United States v. Cruikshank,[52] United States v. Carll,[53] United States v. Hess,[54] and United States v. Simmons,[55] in support of his argument that counts charging in statutory language and lacking factual augmentation are defective and should be dismissed. With the general principles of law quoted from these cases no one can disagree. But in testing the language of an indictment, one must look at the statute and the subject matter of the indictment. In *Cruikshank*, supra, the indictment was based on a special statute, the Civil Rights Act, then known as the Enforcement Act of 1870. The indictment charged the defendants with conspiring to violate the constitutional rights of certain complainants without specifying which constitutional rights were violated. Section 5480 of the Revised Statutes which made unlawful the devising of a scheme to defraud to be accomplished through the Post Office was involved in *Hess*, supra. The scheme was not set forth with any specificity in the indictment.

*Simmons*, supra, also relied on by the defendant, illustrates the point. The

51. As to the tax liability for income which is the fruits of crime, see James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), overruling Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946); United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L. Ed. 1037 (1927); Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87

L.Ed. 704 (1943); and Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952).

52. 92 U.S. 542, 23 L.Ed. 588 (1875).

53. 105 U.S. 611, 26 L.Ed. 1135 (1881).

54. 124 U.S. 483, 8 S.Ct. 571, 31 L.Ed. 516 (1888).

55. 96 U.S. 360, 24 L.Ed. 819 (1877).

interpretation of two counts was involved. One was found invalid; the other was found sufficient. The rule is stated by the Court as follows:

"Where the offence is purely statutory, having no relation to the common law, it is, 'as a general rule, sufficient in the indictment to charge the defendant with acts coming fully within the statutory description, in the substantial words of the statute, without any further expansion of the matter.' 1 Bishop, Crim.Proc., sect. 611, and authorities there cited. But to this general rule there is the qualification, fundamental in the law of criminal procedure, that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, to the end that he may prepare his defence, and plead the judgment as a bar to any subsequent prosecution for the same offence. An indictment not so framed is defective, although it may follow the language of the statute." [56]

The count which the Court found defective was drawn under § 3266, Rev. Stat., which prohibited the distillation of spirits in premises where vinegar is manufactured. Although statutory language was used, requisite specificity was lacking in two respects. The indictment did not charge defendant himself with the violation. It charged that he caused or procured someone alse to commit the act. The name of that person, if known, should have been supplied. The fatal deficiency, however, was the failure of the count to allege the coexistence of the manufacture of vinegar and the distillation of spirits.

But the remaining count brought under § 3281, Rev.Stat., was sustained. This count was stated in statutory language and charged:

"that the defendant 'did knowingly and unlawfully engage: in and carry on the business of a distiller, within the in-

tent and meaning of the internal revenue laws of the United States, with the intent to defraud the United States of the tax on the spirits distilled by him, against the peace,' & c."[57]

In *Carll,* supra, defendant was charged with a violation of § 5431, Rev.Stat., in statutory language which alleged that defendant with intent to defraud the Bank did pass, utter and publish to the Bank a falsely made * * * security of the United States, which, however, omitted the element of scienter. The judges before whom the motions were pending certified the question to the Supreme Court, and the Court said:

"The indictment by omitting the allegation contained in the indictment in United States v. Howell (11 Wall. 432 [20 L.Ed. 195]) and in all approved precedents that defendant *knew* that the instrument which he uttered to be false, forged and counterfeit, fails to charge him with any crime. The omission is a matter of substance and not a 'defect or imperfection in matter of form only.' " [58]

The question certified was answered in the negative.

These cases are cited in Russell v. United States,[59] and are binding on this Court. It is important to remember the thrust of these precedents. In *Cruikshank,* supra, it was held insufficient to charge a conspiracy to violate constitutional rights without specifying which right. In *Hess,* supra, the indictment alleged no particulars of the scheme to defraud which the defendant was charged with intending to perpetrate through the Post Office. By way of illustration, the Supreme Court likened the *Hess* indictment to one for larceny which failed to state the property stolen or identifying its owner or the party from whom it was taken. The essential element of scienter was omitted from the indictment in *Carll,* supra. In *Simmons,* supra, where the general principle of law and its qualifica-

56. United States v. Simmons, 96 U.S. 360, 362, 24 L.Ed. 819 (1877).

57. 96 U.S. at 363–364, 24 L.Ed. 819.

58. 105 U.S. at 613, 26 L.Ed. 1135.

59. 369 U.S. 749, 765, 82 S.Ct. 1038, 8 L. Ed.2d 240 (1962).

tion are set forth, the count omitting an essential statutory allegation, namely, the coexistence of the manufacture of vinegar and the distillation of spirits, rendered that count defective. The remaining count which charged in statutory language was sustained.

■ Where the charges of the indictment followed substantially the wording of the statute which embodied all the elements of the crime and such charges informed the defendant of that with which he was accused so as to enable him to prepare his defense and to plead the judgment in bar of a further prosecution for the same offense, it is usually deemed sufficient. See United States v. Debrow.[60] The Supreme Court added that if the defendant wanted a more definite statement as to certain details, such as the name of the person who administered the oath, it could be obtained by requesting a bill of particulars. Previous decisions of our Court of Appeals are to the same effect.[61] The recent Court of Appeals' decision in Levin v. United States,[62] contains a substantially similar charge in a larceny case which was affirmed by the Court of Appeals.

■ The defendant recognizes that it is proper to charge in alternate counts the offense of larceny and the offense of larceny after trust. Greater specificity by way of a better bill of particulars is indicated under these circumstances and that has been dealt with in a previous section of this opinion. Thus, Counts 3 and 4, and 5 and 6, charging larceny and larceny after trust, in the alternative, are deemed proper.

■ Count 7 is also sufficient. See Pereira v. United States,[63] Johnson v. United States.[64] These cases also involve violations of 18 U.S.C. § 2314, interstate transportation of stolen money.

(b) Defendant's second point is that these counts, 3 through 7, should be dismissed for the reason that they are duplicitous. The defense contends that paragraph two of Count 3, which reads as follows: "A substantial part of the $50,000 referred to in paragraph one of this Count, was not reported on the income tax return of Robert G. Baker and his wife for 1962, which return is referred to in Count 2 of this indictment." charges a separate offense. The Government, on the other hand, states that the purpose of this paragraph is simply to inform the defense as to the identity of the money referred to in this Count and to show the relationship between this Count, 3, and the previous Count numbered 2. At page 647 of the transcript of oral argument on this motion, defense counsel took the position that paragraph two of Count 3 charged a violation of § 7206(1) of the Internal Revenue Code.[65]

■ The narrow question is: Does this second paragraph charge a violation of § 7206? In defining the offense, the statute clearly specifies that any person who *willfully* makes and subscribes to any return, etc., shall be punished as provided by law. The Supreme Court made it clear in Potter v. United States,[66] that the omission of the word "willfully" from a count would be clearly bad in those cases in which willful conduct is an essential element. Defense

60. 346 U.S. 374, 377, 74 S.Ct. 113, 98 L. Ed. 92 (1953).

61. United States v. Henderson, 73 App. D.C. 369, 121 F.2d 75 (1941); Tatum v. United States, 71 App.D.C. 393, 110 F. 2d 555 (1940); as well as Hagner v. United States, 285 U.S. 427, 431, 52 S. Ct. 417, 76 L.Ed. 861 (1932).

62. 119 U.S.App.D.C. 156, 338 F.2d 265 (1964).

63. 202 F.2d 830 (5th Cir. 1953), aff'd 347 U.S. 1, 9, 74 S.Ct. 358, 98 L.Ed. 435 (1954).

64. 207 F.2d 314, 318 (5th Cir. 1953).

65. "Any person who * * * [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * * shall be guilty of a felony * * *."

66. 155 U.S. 438, 446, 15 S.Ct. 144, 39 L. Ed. 214 (1894).

counsel seeks to circumvent this point by asserting that the key words "knowingly and fraudulently" are contained in Count 2, which is incorporated in the second paragraph of Count 3 by reference. Though it is possible to achieve an incorporation by reference, under certain circumstances, nevertheless, when that is done, it must be abundantly clear that such is intended.[67] Here, it is not only not clear that an incorporation by reference is intended, it is clear that it is not intended. See United States v. Plotkin, 233 F.Supp. 317 (D.C.E.D.Wis.1964), and United States v. Buerk, 38 F.Supp. 409 (D.C.E.D.Wis.1941). United States v. Bachman, 164 F.Supp. 898 (D.C.D.C. 1958), and United States v. Shackelford, 180 F.Supp. 857 (S.D.N.Y.1957), recognize the general rule respecting duplicity but did not require the dismissal of the count in question for that reason. United States v. Forys, 113 F.Supp. 580 (D.C. D.R.I.1953), on which defendant also relies, did require dismissal but two offenses were clearly charged in the same count. An allegation of scienter is also required by the statute and this also is lacking in paragraph two of these counts.[68] Since it is clear that those counts are not duplicitous, the motion to dismiss on that ground is denied.

(c) The third point raised by the defense is that the duplicitous nature of the theft counts precludes trial on these counts for the reason that it cannot at this time be ascertained whether the grand jury indicted defendant on the larceny charge in violation of 22 D.C.Code § 2201, or for a violation of 26 U.S.C. § 7206(1), willful making of or subscription to a false income tax return. The Court in point (b) has previously decided that the second paragraph of Counts 3 through 7 does not charge an offense, and for that reason, these counts are not duplicitous. The language in paragraph two is descriptive only and does not constitute a charge.[69]

United States v. Stirone,[70] on which defendant relies, is not in point for the reason that the reversal in that case was required by a fatal variance between the indictment and the proof offered at the trial and instructions thereon by the trial court. Stirone was indicted for violation of the Hobbs Act, 18 U.S.C. § 1951(a), in that he was charged with interference through extortion with the contract of one Rider to move sand in interstate commerce for the manufacture of ready mixed concrete. Over the objection of the defense, the Government was allowed by the trial court to introduce evidence "of an effect on interstate commerce not only in sand brought into Pennsylvania from other States but also in interference with steel shipments from the steel plant in Pennsylvania into Michigan and Kentucky." The dissenting appellate judges [71] were of the opinion that no interference with steel shipments was charged in the indictment, and, accordingly, such evidence should not be received. The Supreme Court agreed with the dissenting judges that it was error to submit the prospective steel shipment question to the jury. For this reason, the case was reversed.

The defense also relies on Russell v. United States.[72] Some understanding of what was involved in that case is necessary before concluding, as the defense does, that this decision requires dismissal of Counts 3 through 7.

The Government charged Russell with contempt of Congress in failing to answer certain questions when summoned

67. See Brown v. United States, 167 F.2d 772 (8th Cir. 1948); United States v. Garrison, 280 F.2d 493, 498 (7th Cir. 1960).

68. As to the essential elements of 26 U.S.C. § 7206(1), see Genstil v. United States, 326 F.2d 243, 245 (1st Cir. 1964).

69. Cf. Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), and see Ford v. United States, 273 U.S. 593, 602, 47 S. Ct. 531, 71 L.Ed. 793 (1927).

70. 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

71. United States v. Stirone, 262 F.2d 571, 578, 580 (3rd Cir. 1959).

72. 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

before a congressional committee. The indictment failed to identify the subject under investigation at the time of the interrogation. Congress provided no one should be prosecuted under 2 U.S.C. § 192, except by grand jury indictment. The convictions were reversed for the reason that the indictment failed to state the subject matter under investigation.[73]

There can be criminality under 2 U.S.C. § 192 only if the questions pertained to the subject under investigation,[74] and it is incumbent on the Government to plead and show that the questions pertained to some matter under investigation.[75] The legislative history makes this clear.[76] The indictment in *Sinclair*[77] set forth in specific detail the subject under investigation. The Court, in *Russell*, stated the question at 764 of 369 U.S., at 1047 of 82 S.Ct.:

"* * * the very core of criminality under 2 U.S.C. § 192 is pertinency to the subject under inquiry of the questions which the defendant refused to answer. What the subject actually was, therefore, is central to every prosecution under the statute. Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute."

and continued at 766 of 369 U.S., at 1048 of 82 S.Ct.:

"And the unfairness and uncertainty which have characteristically infected criminal proceedings under this statute which were based upon indictments which failed to specify the subject under inquiry are illustrated by the cases in this Court we have already discussed. The same uncertainty and unfairness are underscored by the records of the cases now before us. A single example will suffice to illustrate the point."

The Court went on to illustrate by referring to what it characterized as "the meandering statements" of the chairman and other members who purported to identify the subject by saying it was not an attack on free press, but was an investigation of an attempt on the part of the Communist Party to subvert the American press. They said the committee was simply investigating communism wherever they found it. Some said it was an investigation of the communist infiltration of the press. No one informed the witness Price of the subject of the investigation. The Government said at trial that the subject was communist activity generally.

In view of the fact that the crucial issue centered around the pertinency of the question which Russell refused to answer to the subject under investigation, failure to disclose the subject in the indictment required a reversal.

Here, we are confronted *not* with a highly specialized indictment and prosecution. We are confronted with two counts charging larceny, two counts charging larceny after trust, and one charging interstate transportation of stolen money. These charges are laid in traditional terms with requisite specificity. Because the Government has charged in the alternative, the Court has granted most of the defendant's requests for a bill of particulars.

For the foregoing reasons, the Court concludes that the principles set forth in *Stirone* and *Russell* do not require or justify a dismissal of Counts 3 through 7, and, accordingly, these motions will be denied.

(7) Motion to Dismiss Count 8 of the Indictment Pursuant to Rule 12, F.R.Crim.P.

Count 8 concerns the alleged violation of § 7206(2) of the Internal Revenue

---

73. Id., 369 U.S. at 755, 82 S.Ct. 1038.

74. Sinclair v. United States, 279 U.S. 263, 292, 49 S.Ct. 268, 73 L.Ed. 692 (1929).

75. Id., 279 U.S. at 296–297, 49 S.Ct. 268.

76. See Russell v. United States, supra note 72 at 757–758 of 369 U.S., 82 S.Ct. 1038.

77. Supra note 74.

Code, in that defendant is alleged to have procured or aided and abetted in the filing of a false return by Wayne L. Bromley and his wife, Jacqueline, for the calendar year 1963. More specifically, it is alleged that Schedule C of the Bromley return reported gross profit of $21,300, when, in fact, the taxpayer did not have such gross profit. This count also alleges that Schedule C claimed a business deduction of $11,000 for legal and professional fees, when, in fact, taxpayers were not entitled to such a business deduction for legal and professional fees.

Count 8 is laid under 26 U.S.C. § 7206 (2), which, in pertinent part, provides as follows:

"Any person who * * * [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under * * * the internal revenue laws, of a return * * which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person * * * required to present such return, * * shall be guilty of a felony * * *."

Count 8 charges, in the essential statutory language, that the defendant at a specified time and place "wilfully and knowingly aided, assisted in, counseled, procured, and advised the preparation and presentation to the Internal Revenue Service District Director of the 1963 Bromley return, which was false and fraudulent as to material matters * *."

The defense takes the position that Count 8 states no offense. To reach this conclusion, the defense discusses a series of factual assumptions on the basis of which it concludes that there is an overstatement of the Bromley income, which, in turn, flows from the fact that the funds under consideration are conduit funds and that the Bromley return in question dealt with these conduit funds in accordance with a 1921 opinion of the then Commissioner of Internal Revenue. There is the further indication in the position of the defendant that the off-

setting $11,000 for legal and professional fees alleged to have been expended were, in fact, part of the concept of conduit funds.

On a motion to dismiss, the Court is limited to a consideration of facts pleaded in the count in question. In short, all well pleaded facts are taken as true, and if the same constitute a criminal offense, the count is good and must not be dismissed.[78] Applying this familiar principle of law and assuming the facts set forth in this count to be true, then it would appear that the defendant's motion to dismiss this count should be denied.

The sum and substance of the factual allegations of the count under consideration are that the defendant induced Bromley to make the following false and fraudulent representations:

1. That Schedule C of the Bromley return in question claimed a business deduction of $11,000 for legal and professional fees "whereas the defendant Baker then and there well knew that the Bromleys had not expended $11,000 for legal and professional fees during 1963 and were not entitled to that business deduction, and further that the Bromleys had not expended any money for legal and professional fees for the year in question."

2. The Schedule C in question asserted that the Bromleys had a "gross profit from business or profession of $21,300, whereas the defendant Baker then and there well knew that the Bromleys did not have a gross profit from business or profession during the year in question of $21,300 and that about $13,000 of this reported gross profit was in truth and in fact profit and income of the defendant Baker, and not of the Bromleys."

In an extension of his assumption that a conduit relationship existed, defense counsel argues that the Government's charge in this count must fail because the allegations of falsity do not concern matters that are material. Obviously, on a motion to dismiss, the Court

**78.** United States v. South Florida Asphalt Co., 329 F.2d 860 (5th Cir. 1964).

cannot make a determination respecting factual issues. On the face of the indictment, defendant is charged with having willfully and knowingly aided, assisted in, counseled, procured, and advised the preparation and presentation of the 1963 Bromley return which was false and fraudulent as to material matters. The two matters alleged are the false and fraudulent deduction of $11,000 for legal and professional services and the false and fraudulent statement that the Bromleys had a gross profit from their business or profession of $21,300, when, in fact, defendant knew that this was false.

■ The defense argues that over-statement of income is not an offense,[79] and, therefore, it cannot be material. But *Poonian,* on which the defense relies, was not dismissed on motion. The circuit court found a fatal variance between the pleadings and the proof. The ultimate applicability of the *Poonian* case can be determined only after the evidence is properly before the Court. See also United States v. Potstada, 206 F.Supp. 792 (D.C.N.D.Cal.1962).

■ The Supreme Court in Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965), was concerned with charges of tax evasion (26 U.S.C. § 7201) and the lesser included offense, 26 U.S.C. § 7207, the false and fraudulent making and filing of an income tax return. In discussing the propriety of the taxpayer's request for an instruction on § 7207 as a lesser included offense of § 7201, the Court said at 353, of 380 U.S., at 1011 of 85 S.Ct.:

" * * * if the jury believed that an understatement of deductible expenses had offset the understatement of gross receipts, while the defendant would have violated § 7207 by willfully *making a material false and fraudulent statement on his return*, he would not have violated § 7201 as there would not have been the requisite § 7201 element of a tax deficiency." (Emphasis supplied.)

It is noted that the materiality language of § 7207 and § 7206 is identical. Regardless of the tax consequences of making the false statement, the Court in United States v. Rayor, 204 F.Supp. 486, 490 (D.C.S.D.Cal.1962), held with respect to the issue of materiality and the section in question, 7206(2):

"The test of materiality is whether the statement was *material to the contents* of the return. Obviously it is material because it is required to be made in order that the taxpayer estimate and compute his tax correctly. The 1954 Internal Revenue Code defines income and deductions with great precision. (See, e. g. 26 U.S.C.A. §§ 61 to 273.)

■ Deductions 'one obtains not as [a matter] of right but as of grace.' (United States v. Olympic Radio and Television [Inc.], 1955, 349 U.S. 232, 235, 75 S.Ct. 733, 99 L.Ed. 1024)

The burden of proving that he is entitled to it rests on the taxpayer. (Factor v. Commissioner of Internal Revenue, 9 Cir., 1960, 281 F.2d 100, 110, and cases in Notes 8 and 9)

"This being the case, the Internal Revenue Service, if it is to audit properly the return and allow or disallow claimed deductions, must have complete and truthful disclosure. And we must assume that the Congress had this in mind when it made punishable so many different acts which may result in evasion. (United States v. Beacon Brass Co., supra, 344 U.S. [43] p. 46, 73 S.Ct. 77, 97 L.Ed. 61)"

Assuming, as we must on a motion to dismiss, that these and other facts alleged are true, defendant's motion to dismiss Count 8 will be denied.

(8) Motion to Dismiss Count 9 of the Indictment Pursuant to Rule 12, F.R.Crim.P.

This count charges the defendant Baker and two unindicted coconspirators, Bromley and Jones, with conspiring (a)

79. Poonian v. United States, 294 F.2d 74 (9th Cir. 1961).

to defraud the United States in the exercise of its governmental functions and its right of (i) ascertaining, computing, levying, assessing, and collecting income taxes due and owing the United States by Baker and Bromley for the years in question, 1963 and 1964, and (ii) of investigating, detecting, and prosecuting violations of the Internal Revenue and other laws of the United States by concealing from, and continuing to conceal from, misrepresenting to, and continuing to misrepresent to, the United States by causing Bromley to overstate his income for the years 1963 and 1964 by including in his returns for those years certain income of the defendant Baker, and by causing Bromley to claim certain wholly fictitious business deductions in his 1963 and 1964 returns and that Baker would falsely and perjuriously understate in his 1963 and 1964 returns his gross profit and income in an amount equal to a substantial part of the Bromley overstatement.

The defendant moves to dismiss on the following three grounds: (a) that Count 9 fails to charge any offense; (b) that it does not sufficiently inform the defendant of the charge against him; and (c) that it charges more than one crime within the same count. The elements of the offense charged are the agreement, the objective toward which the agreement is directed, and an overt act.[80]

Section 371 of Title 18, U.S.Code, reads, in pertinent part, as follows:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

The argument for the defense with respect to its point (a) is in substance as follows: that while numbered paragraph 6 of Count 9 of the indictment charges an offense, that numbered paragraphs 7 through 11, which describe the manner and means by which the conspiracy was carried out, do not specifically charge the defendant Baker with criminal conduct, and, therefore, paragraph 6 is limited by, or in other words, rendered nugatory by reason of the failure of paragraphs 7 through 11 also specifically to charge criminal conduct on the part of the defendant.[81] Count 9, when viewed in its entirety, sets forth the unlawful purpose of the conspirators and recites facts from which it sufficiently appears that the objective of the conspiracy was to defraud the United States and to commit a substantive offense against it. It, thus, charges a conspiracy. With sufficient certainty to apprise the defendant of the nature of the charge against him, adequate facts are set forth with sufficient particularity. As a result of this, a plea in bar would be available to him if subsequently he were charged and prosecuted again for the same offense. He is sufficiently informed of what he must be prepared to meet. These circumstances establish the sufficiency of an indictment.[82]

The sufficiency of a conspiracy count to defraud the United States similar to that contained in Count 9 was sustained in United States v. Klein, 247 F.2d 908, 915, 918 (2d Cir. 1957), cert. denied 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354

---

80. United States v. Offutt, 75 U.S.App. D.C. 344, 346, 127 F.2d 336, 338 (1942); Reno v. United States, 317 F.2d 499, 505 (5th Cir. 1963), cert. denied 375 U.S. 828, 84 S.Ct. 72, 11 L.Ed.2d 60 (1963); United States v. Rabinowich, 238 U.S. 78, 86, 35 S.Ct. 682, 59 L.Ed. 1211 (1915).

81. Glasser v. United States, 315 U.S. 60, 65, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

82. Russell v. United States, 369 U.S. 749, 763, 765, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953); Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932); United States v. Behrman, 258 U.S. 280, 288, 42 S.Ct. 303, 66 L.Ed. 619 (1922); Wong Tai v. United States, 273 U.S. 77, 81, 47 S.Ct. 300, 71 L.Ed. 545 (1927).

(1958). And see Dennis v. United States, 384 U.S. 855, 860–861, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) and cases cited therein.

■ Defendant has cited no authority in support of his argument that the allegations of paragraph 6, which plainly charge a conspiracy, are rendered nugatory by the following paragraphs numbered 7 through 11, which allege the manner and means whereby the conspiracy was effected without specifically reasserting the specific charges of illegality contained in paragraph 6. Count 9 must be viewed as an entirety and not as a series of compartmentalized allegations, each of which charges criminal conduct. That might subject the Government to further charges by the defense to the effect that more than one crime was charged in a single count. In any event, it is unnecessary. The defense also objects to the manner in which the conspiracy charge is set forth, pointing out that it is not a plain, concise, and definite written statement of the essential facts constituting the offense charged, as required by Rule 7(c) of the Federal Rules of Criminal Procedure. The defense also objects to the advantages which flow from a conspiracy count insofar as the prosecution is concerned. It is plain that conspiracy is still a permissible charge.[83] Courts have recognized that conspiracy counts often confront a defendant with grave difficulties and afford the prosecution opportunities to bring in evidence that could not normally be achieved were the prosecution relegated to substantive counts.[84] But until Congress repeals the conspiracy statute, or higher courts place a severe limitation upon its use, it remains available to the prosecution. Every reasonable effort will be made insofar as the order of proof is concerned to require that the conspiracy be established before proof of the incidents of the conspiracy are admitted in evidence.

■ Defendant next objects to Count 9 for the reason that he states it charges more than one offense. This objection seems somewhat inconsistent with his position that the charge as a whole, he has said, states no criminal offense. In this section of the memorandum, the defense asserts that paragraphs 7 through 11 charge other conspiracies ("however inadequately"). As previously explained, these paragraphs were designed by the Government to illustrate the manner and means whereby the conspiracy specifically charged in paragraph 6 was effectuated or accomplished. In any event, they are part of the overall plan.[85]

■ The defense memorandum also objects to the inclusion in Count 9 of conspiracy charges relating to the taxable years 1963 and 1964, arguing that a single count may embrace no more than the charge concerning a single year. A single conspiracy, however, to evade taxes for two or more years has been sustained. United States v. Haskell, 327 F.2d 281 (2d Cir. 1964), cert. denied 377 U.S. 945, 84 S.Ct. 1351, 12 L.Ed.2d 307 (1964); Lott v. United States, 309 F.2d 115, 120 (5th Cir. 1962), cert. denied 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 498 (1963), which appears to be contra to the case on which the defense relies, United States v. Goldberg, 206 F.Supp. 394 (D.C. E.D.Pa.1962).

■ The final attack upon Count 9 of the indictment is predicated upon the proposition that it charges a conspiracy, defendant says, to violate 26 U.S.C. § 7206(1), as well as a conspiracy to defraud the United States under the general conspiracy clause of 18 U.S.C. § 371. The defense points out that § 371 con-

---

83. Dennis v. United States, supra note 7, 384 U.S. p. 860–861, 86 S.Ct. 1840.

84. See concurring opinion of Mr. Justice Jackson in Krulewitch v. United States, 336 U.S. 440, 453–454, 69 S.Ct. 716, 93 L.Ed. 790 (1949).

85. Blumenthal v. United States, 332 U.S. 539, 557, 559, 68 S.Ct. 248, 92 L.Ed. 154 (1947).

demns two types of conspiracies—one, to commit substantive offenses against the United States specified under other statutes and the other, to defraud the United States under the second clause of § 371. Since the latter conspiracy is itself a substantive offense, the defense argument is that two crimes are charged rather than a single conspiracy which has two objects. Judge Prettyman's opinion in May v. United States, 84 U.S.App.D.C. 233, 175 F.2d 994, at page 1002, (1949), cert. denied 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505 (1949), disposes of this contention as follows:

"Appellants contend that the conspiracy statute itself describes two offenses. That statute reads: 'If two or more persons conspire either to commit any offense against the United States, or to defraud the United States * * *.' Appellants say that the 'either * * * or' shows that Congress meant that a conspiracy to commit an offense against the United States is a different offense from a conspiracy to defraud the United States. We think that the opinion and decision in the Manton case [United States v. Manton, 2 Cir., 107 F.2d 834] established a rule contrary to this contention. The court was there dealing with this same statute. The argument was that a conspiracy to violate a criminal statute and to defraud the United States was two offenses. The court, quoting Frohwerk v. United States [249 U.S. 204, 39 S.Ct. 249, 63 L.Ed. 561], said: 'The conspiracy is the crime, and that is one, however diverse its objects.'"

For the foregoing reasons, the defense motion to dismiss Count 9 will be denied.

(9) Motion for Severance of Counts Pursuant to Rules 8(a) and 14, F.R.Crim.P.

■ The defendant contends that the joinder of these various counts is improper under Rule 8(a), F.R.Crim.P., and, alternatively, assuming a proper joinder, that the defendant is prejudiced thereby and is, therefore, entitled to a severance under Rule 14, F.R.Crim.P.

Rule 8(a), F.R.Crim.P., permits two or more offenses to be joined in a single indictment if they are: "* * * of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Rule 14, F.R.Crim.P., provides for a severance of otherwise permissibly joined counts when "it appears that a defendant or the government is prejudiced by a joinder of offenses."

Defendant concedes that Counts 1 and 2 are properly joinable and may be tried together, that Counts 3 through 7 are properly joinable and may be tried together, and that Counts 8 and 9 are properly joinable and may be tried together.[86] The question, therefore, is whether Counts 1 and 2 may be properly joined with Counts 8 and 9 and whether these four counts may be joined with Counts 3 through 7.

As previously stated, Counts 1 and 2 charge the defendant with the evasion of income tax for the years 1961 and 1962. Certainly, the conspiracy, as charged in Count 9, to falsify Baker's 1963 and 1964 income tax returns by understating his income is an offense of "similar character" to Baker's actual falsification of his tax returns in 1961 and 1962, as charged in Counts 1 and 2. Count 9 further charges that the defendant attempted to conceal his taxable income from the Internal Revenue authorities by conspiring with Wayne Bromley to the end that Bromley would file tax returns falsely claiming as his own monies which, in fact, was income to the defendant. The falsification of Bromley's 1963 tax return was one of the objects of this conspiracy and Count 8 simply charges that this object was, in fact, achieved. It seems clear, therefore, that Counts 1, 2, 8, and 9 are of "similar character" in that they charge the defendant with

---

86. Page 737, transcript of oral argument.

transactions the ultimate purpose of which was to use false and fraudulent income tax returns to conceal the existence, sources, and nature of his taxable income during the years 1961 (Count 1), 1962 (Count 2), 1963 (Counts 8 and 9), and 1964 (Count 9).

If the "theft" counts, Counts 3 through 7, are "connected together" with the counts previously discussed, the joinder is proper. Each "theft" count charges the defendant with illegally obtaining cash during the year 1962. The second paragraph of each "theft" count states that the cash in question constituted a portion of the defendant's unreported income during 1962 as charged in Count 2 of the indictment. The Government further states that there will be a complete overlap of proof between Count 2 and Counts 3 through 7, in that it will be necessary to establish and prove the "theft" counts in order to demonstrate the fraudulent character of the defendant's 1962 tax return. In short, if a separate trial were ordered for the "theft" counts, the Government would still be faced with proving those counts in order to establish the source of the defendant's unreported income as charged in Count 2. As Judge Groner, speaking for the Court of Appeals, said in Beard v. United States, 65 App.D.C. 231, 82 F.2d 837 (1936), at 840:

> "The test is whether the same evidence is necessary to establish both charges, for in those circumstances counts relating to the same transactions or series of transactions may be joined, even though the offenses are not of the same grade."

Thus, it seems clear that the "theft" counts are "connected together" with Count 2 of the indictment and that all the counts of the indictment reflect a "common scheme or plan" whereby the defendant obtained large sums of money which constituted taxable income while concealing the same from the Internal Revenue Service by falsifying the tax returns of himself and others. As the

Court said in Emmich v. United States, 298 F. 5 (6th Cir. 1924), at 9:

> "The real character of the offense lies, not in the failure to file a return, or in the filing of a false return, but rather in the attempt to defraud the government by evading the tax. The technique may differ, but the opus is the same."

 However, even though joinder is permissible under Rule 8(a), if the defendant can demonstrate that he would be prejudiced thereby, he is entitled to a severance under Rule 14. Such relief, however, is within the discretion of the trial judge and the defendant has the burden of establishing such a claim.[87]

The defendant contends that he may be prejudiced for one or more of the following reasons as set forth in Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964), at 88:

> "(1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find."

Further, the defendant contends that the joinder of these offenses will deprive him of his "right to silence" by preventing him from effectively choosing to testify as to one series of offenses and not another. See Cross v. United States, 118 U.S.App.D.C. 324, 335 F.2d 987 (1964); United States v. Steel, 38 F.R.D. 421 (S.D.N.Y.1965); and Dunaway v. United States, 92 U.S.App.D.C. 299, 205 F.2d 23 (1953).

 As has been previously indicated, there will be a considerable overlap of proof at the trial of this case, not only between Count 2 and Counts 3 through 7, but also between Count 8 and

---

87. United States v. Haim, 218 F.Supp. 922 (D.C.W.D.Pa.1963).

Count 9, the conspiracy count. These common elements of proof as to the various counts fortifies the "public interest" in avoiding duplicitous, time consuming and expensive trials. In addition, because of the overlap of proof, separate trials would not insulate the defendant from proof of the "theft" counts. See United States v. Verra, 203 F.Supp. 87 (S.D.N.Y.1962) and United States v. Steel, supra. Thus, it is clear that whatever cumulative effect, if any, the presentation of proof in this case might have would not be eliminated by severing the various counts.

Further, as the Court said in United States v. Steel, supra, 38 F.R.D. at page 424: " * * * there is no indication that defendant's case will not be presented to and impartially considered by a trier of facts under proper instructions on the law applicable to evidence appropriately admissible."

Rule 14(a), however, is not absolute. It calls for a balancing of interests: that of the public in the fair and expeditious disposition of criminal litigation without unnecessary delay and duplication, as well as that of the defendant in not being confronted with the sheer weight of a large number of different offenses. The case of Daly v. United States, 119 U.S.App.D.C. 353, 342 F.2d 932 (1964), illustrates the propriety of joining 15 counts alleging false pretenses, unlawful practice of the healing arts, unlawful possession of dangerous drugs, and unlawful delivery of dangerous drugs. In Gregory v. United States, D.C.Cir., 369 F.2d 185, decided July 28, 1966, in which murder and robbery were joined, the Court held that in a capital case, it may be seriously questioned whether it is proper to join for trial offenses occurring at different times and places. The Court also noted that the evidence as to one of the robbery counts was so weak that its primary usefulness was to support the Government's case as to the robbery which resulted in the murder.

A more serious question, however, is raised by the possibility that the defendant may want to testify on one aspect of the joined offenses and not as to another. Since any decision by the defendant to testify will constitute a waiver of his privilege against self-incrimination in a joint trial the defendant will be unable to limit his testimony. However, if individual trials were held as to the separate offenses, defendant's testimony at one trial would not constitute a waiver of his privilege to remain silent at a separate trial. But before a determination of prejudice can be made, more facts must be before the Court. Defendant cannot, nor should he be, at this stage of the proceedings, forced to irrevocably elect whether to testify or not. As the Court said in Cross v. United States, supra, 335 F.2d at page 989:

"His decision whether to testify will reflect a balancing of several factors with respect to each count: the evidence against him, the availability of defense evidence other than his testimony, the plausibility and substantiality of his testimony, the possible effects of demeanor, impeachment, and cross-examination."

Therefore, the possibility of such prejudice inuring to the defendant is at best problematical at this point and, accordingly, does not constitute sufficient grounds for severance. By denying severance, however, the Court does not intend to deprive the defendant of his right to effectively choose whether to testify. If, at trial, the defendant decides he wants to testify only in respect to one series of the joined offenses, it will be open to him to renew his motion and to demonstrate what actual prejudice he would incur by testifying on the joined offenses.

There remains one further point for consideration. Defendant contends that the joinder of the "theft" counts, traditionally a local offense, with the income tax counts, a Federal offense, deprives him of the equal protection of the laws as that clause is embodied in the due

process clause of the Fifth Amendment. Except insofar as it is embodied in the due process clause, the equal protection clause of the Fourteenth Amendment is not applicable to the District of Columbia. Hamilton Nat'l Bank v. District of Columbia, 81 U.S.App.D.C. 200, 156 F.2d 843 (1946); O'Connor v. District of Columbia, 80 U.S.App.D.C. 351, 153 F.2d 225 (1946).

While the two phrases are not mutually exclusive since they both stem from a basic concept of fairness, they are not interchangeable. The equal protection clause provides a "more explicit safeguard of prohibited unfairness than [the due process clause]." Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Certainly, discrimination may be so unjustifiable that it violates due process, but the instant case does not fall within that category. It is true that a joinder of theft and income tax counts could only be effectuated in the District of Columbia due to the dual legislative role exercised by Congress over the District. But this classification on the basis of citizenship does not render such a joinder inherently or fundamentally unfair. The Court finds that the joinder of these counts, proper under the rules, is not violative of the due process clause of the Fifth Amendment.

Although there is certainly support for a finding of a proper joinder in the present case, a thorough search has turned up no firm precedent either to support a severance or a joinder in this situation. The Court concludes that joinder in this case meets the requirements set forth in Rule 8(a) and that the defendant has failed to demonstrate any actual prejudice under Rule 14.

The defendant's motion for severance will be denied without prejudice to its renewal at such time as the defendant makes a decision as to whether he will testify or not.

Counsel will submit an order carrying into effect the determinations of the Court as to each of the nine motions.